UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | |
|---|---|
| ANGELA THOMPSON and<br>BRIAN THOMPSON,<br><br>    Plaintiffs,<br><br>v.<br><br>MEDGUARD ALERT, INC.,<br>QUICK RESPONSE ALERT, INC.,<br>and LIFEWATCH INC.<br><br>    Defendant. | CIVIL COMPLAINT<br><br><br>CASE NO. 1:18-CV-01836<br><br><br><br>**JURY DEMAND** |

## COMPLAINT

Now come ANGELA THOMPSON and her husband BRIAN THOMPSON ("Plaintiffs"), complaining as to the conduct of MEDGUARD ALERT, INC. ("MedGuard"), QUICK RESPONSE ALERT, INC. ("Quick Response"), and LIFEWATCH INC. ("Lifewatch") (collectively, "Defendants"), for their unlawful conduct as follows:

### NATURE OF THE ACTION

1. Plaintiffs bring this action for damages pursuant to the Telephone Consumer Protection Act ("TCPA") under 47 U.S.C. § 227 *et seq.*; the Ohio Consumer Sales Practices Act ("CSPA") under Ohio Rev. Code Ann. § 1345 *et seq.*; and the Ohio Telephone Solicitation Sales Act ("TSSA") at R.C. 4719.15.

[ 1 ]

## JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the TCPA. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Defendant conducts business in the Northern District of Ohio and substantial portion of the events giving rise to the claims occurred within the Northern District of Ohio.

## PARTIES

4. Plaintiffs are natural persons residing within this District.

5. Plaintiffs are "person[s]" as defined by 47 U.S.C. § 153(39).

6. Defendant MedGuard Alert, Inc. is a provider of medical alert devices and medical alert device monitoring services.

7. Defendant MedGuard Alert, Inc. is a Connecticut corporation headquartered in Middletown, Connecticut.

8. On reference and belief, MedGuard Alert, Inc. is an alter ego of Lifewatch Inc. Between these two entities there exists a unity of control and no observance of corporate formalities. It is in the interests of justice to treat these two entities as identical.[1]

---

[1] MedGuard Alert, Inc. currently operates www.lifewatch-usa.com. *Why MedGuard Alert?*, MedGuard Alert, Inc., www.lifewatch-usa.com/why-us (last accessed Aug. 9, 2018).

9. Defendant Quick Response Alert, Inc. is a provider of medical alert devices and medical alert device monitoring services.

10. Defendant Quick Response Alert, Inc. is a New York Corporation with its headquarters in Lynbrook, New York.

11. On reference and belief, Quick Response Alert, Inc. is an alter ego of Lifewatch Inc.  Between these two entities there exists a unity of control and no observance of corporate formalities.  It is in the interests of justice to treat these two entities as identical.[2]

12. Defendant Lifewatch Inc. is a provider of medical alert devices and medical alert device monitoring services.

13. Defendant Lifewatch Inc. is a New York corporation headquartered in Middletown, Connecticut.

14. Defendants are a "person[s]" as defined by 47 U.S.C. § 153(39).

15. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers at all times relevant to the instant action.

---

[2] According to D&B Hoovers, www.lifewatch-usa.com is the website for Quick Response Alert, Inc. *Quick Response Alert, Inc.*, D&B Hoovers, http://www.hoovers.com/company-information/cs/company-profile.quick_response_alert_inc.78bcf22cfb9645af.html (last accessed Aug. 9, 2018).

**FACTS SUPPORTING CAUSES OF ACTION**

16. On May 9, 2017, Angela Thompson received a call from MedGuard on her personal cellular phone, number (216) XXX-4510. The call went to voicemail, and MedGuard left the following pre-recorded message on Angela Thompson's voicemail:

> . . . out of every three Americans that are over 65 fall every year in the U.S., and that fall may be the last. Don't be a statistic; press 1 now to receive a medical alarm at no cost. Press 1 now or press 9 to opt out.

17. Angela Thompson's cellular phone has been registered on the National "Do Not Call" list since 2012.

18. On May 18, 2017, Angela Thompson received another pre-recorded voice call from MedGuard on her cellular phone. This call was answered or sent to voicemail.

19. On May 26, 2017, Angela Thompson received another pre-recorded voice call from MedGuard on her cellular phone. This call was answered or sent to voicemail.

20. On June 9, 2017, Angela Thompson received another call from MedGuard on her cellular phone. Brian Thompson, her husband, answered this call and heard a more complete version of the pre-recorded message previously left on Angela Thompson's answering machine:

> Hi this is Todd with the fulfillment department. Your wellness package is ready to be shipped. Please press 1 and hold the line to receive a medical alert system. One out of every three Americans that are over 65 fall every year in the U.S., and that fall may be the last. Don't be a statistic; press 1 now to receive a medical alarm at no cost. Press 1 now or press 9 to opt out.

21. Brian Thompson then followed the prompts of the interactive voice response system until he placed an order for a medical alert device and the associated monitoring service.

22. This interaction resulted in an attempted charge of $29.95 on Brian Thompson's credit card from MedGuard's alter ego Quick Response. The charge did not go through as a result of insufficient funds available on the card.

23. Brian Thompson, acting with Angela Thompson's authorization, called Quick Response's 800-number and told the Quick Response employee who he reached not to call again. He also asked for a copy of Quick Response's do not call policy.

24. Despite this interaction, MedGuard continued to place calls to Angela Thompson featuring a pre-recorded voice.

25. On August 1, 2017, Angela Thompson received another call from MedGuard on her cellular phone. This call went to voicemail, and MedGuard left a pre-recorded message identical to the earlier message on Angela Thompson's voicemail.

26. On August 28, 2017, Angela Thompson received another call from MedGuard on her cellular phone. This call also went to voicemail, and MedGuard left a pre-recorded message identical to the earlier messages on Angela Thompson's voicemail.

27. On March 8, 2018, Angela Thompson received another call from MedGuard on her cellular phone. This call also went to voicemail, and MedGuard left a pre-recorded message identical to the earlier messages on Angela Thompson's voicemail.

28. On March 22, 2018, Angela Thompson received another call from MedGuard on her cellular phone. Brian Thompson, her husband, answered this call and again heard a more complete version of the pre-recorded message previously left on Angela Thompson's answering machine:

> Hi this is Todd with the fulfillment department. Your wellness package is ready to be shipped. Please press 1 and hold the line to receive a medical alert system. One out of every three Americans that are over 65 fall every year in the U.S., and that fall may be the last. Don't be a statistic; press 1 now to receive a medical alarm at no cost. Press 1 now or press 9 to opt out.

29. Brian Thompson then followed the prompts of the interactive voice response system until he placed an order for a medical alert device and the associated monitoring service.

30. This interaction resulted in a $29.95 charge on Brian Thompson's credit card from MedGuard Alert, Inc.

31. Brian Thompson, subsequently called MedGuard and informed it that its telemarketing practices were illegal. Acting with Angela Thompson's authorization, he requested that MedGuard stop calling them.

32. This interaction resulted in MedGuard crediting the $29.95 back to Brian Thompson's credit card.

33. On April 9, 2018, Angela Thompson received another call from MedGuard on her cellular phone. This call also went to voicemail, and MedGuard left a pre-recorded message identical to the earlier messages on Angela Thompson's voicemail.

34. On April 25, 2018, Angela Thompson received another call from MedGuard on her cellular phone. This call also went to voicemail, and MedGuard left a pre-recorded message identical to the earlier messages on Angela Thompson's voicemail.

35. On May 9, 2018, Angela Thompson received another call from MedGuard on her cellular phone. This call also went to voicemail, and MedGuard left a pre-recorded message identical to the earlier messages on Angela Thompson's voicemail.

36. All of MedGuard's calls to Angela Thompson's cellular phone, except for the calls on March 8, 2018 and March 22, 2018, displayed on her caller ID as originating from local 216 area code numbers. Each of these numbers, when called back, was non-functional.

37. Upon information and belief, MedGuard used the technique known as spoofing to cause its calls to appear as if they originated from such local numbers.

38. Angela Thompson received numerous other calls that did not result in voicemails but displayed on her caller ID as originating from phone numbers similar to the apparently spoofed numbers shown for most of MedGuard's calls. On information and belief, MedGuard was responsible for most or all of those additional calls.

39. MedGuard does not possess either a certificate of registration or a certificate of registration renewal under R.C. 4719.03.[3]

---

[3] *See* Ohio Attorney General, "Telephone Solicitors – Companies Currently Registered as Telephone Solicitors Under Telephone Solicitation Sales Act (TSSA)" *available at* https://www.ohioattorneygeneral.gov/Individuals-and-Families/Consumers/Telephone-Solicitors (not listing Defendant as registered).

40. MedGuard's campaign of harassing phone calls was highly irritating and caused Plaintiffs actual harm, including, but not limited to, invasion of privacy, aggravation that accompanies unsolicited telephone calls, emotional distress, increased usage of their telephone services, and temporary deprivation of money or credit.

### COUNT I—AUTODIALER VIOLATIONS OF THE TCPA

41. Plaintiffs reallege the paragraphs above as though fully set forth herein.

42. The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(A), prohibits calling persons on their cellular phones using an automatic telephone dialing system ("ATDS") without their prior express consent.

43. The TCPA, under 47 U.S.C. § 227(b)(1), defines an ATDS as "equipment which has the capacity … to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."

44. The volume of calls placed by MedGuard to Angela Thompson, and the use of an interactive voice response system, indicate that MedGuard employed an ATDS to place its calls to Angela Thompson's cellular telephone.

45. At no time did Plaintiffs give prior express consent to MedGuard permitting it to contact them via an ATDS.

46. MedGuard violated the TCPA by placing at least eleven phone calls to Angela Thompson's cellular phone using an ATDS without prior consent.

47. MedGuard's conduct in violating the TCPA was knowing and willful.

48. Plaintiffs are entitled to $500 per call under this count, trebled for knowing or willful violations.

49. Lifewatch and Quick Response are liable for MedGuard's misconduct as alter egos of MedGuard.

### COUNT II — PRE-RECORDED VOICE VIOLATIONS OF THE TCPA

50. Plaintiffs reallege the paragraphs above as though fully set forth herein.

51. The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(A), prohibits calling persons on their cellular phones using a pre-recorded or artificial voice without their prior express consent.

52. At no time did Plaintiffs give prior express consent to MedGuard permitting it to contact them via pre-recorded or artificial voices.

53. MedGuard violated this provision by placing at least eleven calls to Angela Thompson's cellular phone that featured a pre-recorded or artificial voice.

54. MedGuard's conduct in violating the TCPA was knowing and willful.

55. Plaintiffs are entitled to $500 per call under this count, trebled for knowing or willful violations.

56. Lifewatch and Quick Response are liable for MedGuard's misconduct as alter egos of MedGuard.

### COUNT III — VIOLATIONS OF THE "DO NOT CALL" LIST

57. Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

58. The TCPA, pursuant to 47 U.S.C. 227(c)(5)(B), permits a person who "has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation" of certain regulations promulgated by the Federal Communications Commission ("FCC") to sue for statutory damages. The amount of

[ 9 ]

these damages is $500 per violation, trebled for knowing or willful violations.

59. The FCC has, in the regulations described by the above code section, prohibited "initiat[ing] any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

60. Further, the FCC has prohibited calling a telephone subscriber who has requested not to be called again, and these regulations require telemarketers to maintain certain internal policies and procedures to ensure opt-out requests are honored. *See* 47 C.F.R. § 64.1200(d).

61. MedGuard violated the TCPA by placing calls to Angela Thompson's cellular phone when it had been registered on the national "Do Not Call" list.

62. MedGuard further violated the TCPA by failing to honor Angela Thompson's opt-out request and by not maintaining adequate telemarketing policies and procedures.

63. MedGuard's violations were knowing or willful.

64. Plaintiffs are entitled to $500 per call under this Count, trebled for knowing or willful violations.

65. Lifewatch and Quick Response are liable for MedGuard's misconduct as alter egos of MedGuard.

[ 10 ]

## COUNT IV – VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT

66. Plaintiffs reallege the above paragraphs as though fully set forth herein.

67. The CSPA, pursuant to R.C. 1345.02(A), states that "[n]o supplier shall commit an unfair or deceptive practice in connection with a consumer transaction."

68. Plaintiffs are "person[s]" as defined by R.C. 1345.01(B).

69. Defendants are "supplier[s]" as defined by R.C. 1345.01(C).

70. Medical device sales are "consumer transactions" as defined by R.C. 1345.01(A).

71. R.C. §1345.09(B) thus grants Plaintiffs a private right of action against Defendants for $200 per violation of the CSPA, plus noneconomic damages of up to $5,000 per violation in an amount to be determined at trial, plus attorney fees.

72. Under the CSPA, the Court may award a multiplier for attorney fees for contingency fee cases, such as this one. *Davis v. Mut. Life Ins. Co. of New York*, 6 F.3d 367, 383 (6th Cir. 1993) (citing *Bittner v. Tri-Cty. Toyota, Inc.*, 569 N.E.2d 464 (Ohio 1991)).

    a.    **Autodialer Violations of the TCPA.**

73. MedGuard has violated the CSPA by using an ATDS in violation of the TCPA as set forth above.

74. MedGuard's actions were unfair, deceptive, and unconscionable under the CSPA because they were intended to harass Plaintiffs into agreeing to pay a significant monthly fee for a medical alert device.

[ 11 ]

75. Violations of the TCPA (at least to the extent that they are unfair, deceptive, or unconscionable) are violations of the CSPA. *See, e.g.*, *Ambrose v. Prime Time Enterprises*, No. CV 04 547298, 2005 WL 646147, at *1 (Ohio Com. Pl. Feb. 23, 2005); *Tower City Title Agency, Inc. v. Phillips*, 2008-Ohio-957, ¶ 5 ("Ohio courts have found that a violation of the TCPA also results in a violation of R.C. 1345.02 of the Ohio CSPA.").

76. MedGuard committed such violations after such decisions were available for public inspection pursuant to R.C. 1345.05(A)(3).

77. MedGuard's actions therefore violated the CSPA, and Plaintiffs are entitled to compensation for each and every violation.

78. Lifewatch and Quick Response are liable for MedGuard's misconduct as alter egos of MedGuard.

**b.  Pre-Recorded Voice Violations of the TCPA.**

79. MedGuard has violated the CSPA by using a pre-recorded voice in violation of the TCPA as set forth above.

80. MedGuard's actions were unfair, deceptive, and unconscionable under the CSPA because they were intended to harass Plaintiffs into agreeing to pay a significant monthly fee for a medical alert device.

81. Violations of the TCPA (at least to the extent that they are unfair, deceptive, or unconscionable) are violations of the CSPA. *See, e.g.*, *Ambrose v. Prime Time Enterprises*, No. CV 04 547298, 2005 WL 646147, at *1 (Ohio Com. Pl. Feb. 23, 2005); *Tower City Title Agency, Inc. v. Phillips*, 2008-Ohio-957, ¶ 5 ("Ohio courts have found that a violation of the TCPA also results in a violation of R.C. 1345.02 of the Ohio CSPA.").

82. MedGuard committed such violations after such decisions were available for public inspection pursuant to R.C. 1345.05(A)(3).

83. MedGuard's actions therefore violated the CSPA, and Plaintiffs are entitled to compensation for each and every violation.

84. Lifewatch and Quick Response are liable for MedGuard's misconduct as alter egos of MedGuard.

### c. Violations of the "Do Not Call" List.

85. MedGuard has violated the CSPA by placing calls to Angela Thompson's cellular phone when it had been registered on the national "Do Not Call" list.

86. MedGuard's actions were unfair, deceptive, and unconscionable under the CSPA because they were intended to harass Plaintiffs into agreeing to pay a significant monthly fee for a medical alert device.

87. Telemarketing calls to phone numbers listed on the national "Do Not Call" list are unfair acts in violation of the CSPA. *United States v. Dish Network LLC*, 256 F.Supp.3d 810, 967 (C.D. Ill. 2017).

88. MedGuard committed such violations after such decisions were available for public inspection pursuant to R.C. 1345.05(A)(3).

89. MedGuard's actions therefore violated the CSPA, and Plaintiffs are entitled to compensation for each and every violation.

90. Lifewatch and Quick Response are liable for MedGuard's misconduct as alter egos of MedGuard.

      **d.     Violations of R.C. 4719.02.**

91.    R.C. 4719.02 provides that "[n]o person shall act as a telephone solicitor without first having obtained a certificate of registration or registration renewal from the attorney general under section 4719.03 of the Revised Code."

92.    MedGuard acted as a telephone solicitor within the meaning of R.C. 4719.01(A)(7) & (8) each time it placed a call to Plaintiff in which it "represent[ed] the price or the quality or availability of goods or services."

93.    Upon reference, MedGuard has not obtained a certificate of registration or registration renewal under section 4719.03.

94.    R.C. 4719.14 provides that "A violation of section 4719.02 . . . of the Revised Code is an unfair or deceptive act or practice in violation of section 1345.02 of the Revised Code."

95.    MedGuard has therefore committed unfair or deceptive acts or practices in violation of the CSPA, R.C. 1345.02 by acting as a telephone solicitor without proper registration.

96.    Plaintiffs are entitled to compensation for each and every violation.

97.    Lifewatch and Quick Response are liable for MedGuard's misconduct as alter egos of MedGuard.

      **e.     Violation of R.C. 4719.06.**

98.    Pursuant to R.C. 4719.06, MedGuard was required to make certain important disclosures (such as its true name) within the first sixty seconds of making the call.

99. Additionally, MedGuard was required to make disclosures to Plaintiffs regarding their rights before selling them anything.

100. MedGuard failed to make the required disclosures.

101. Failing to make these disclosures constitutes a deceptive act under the CSPA.  R.C. 4719.14.

102. Plaintiffs were injured because MedGuard failed to make the required disclosures.  Specifically, they had to be charged money by MedGuard to learn MedGuard's identity.

103. MedGuard has therefore violated the CSPA, and Plaintiffs are entitled to damages.

104. Lifewatch and Quick Response are liable for MedGuard's misconduct as alter egos of MedGuard.

      f.    **Violation of R.C. 4719.07(C).**

105. MedGuard violated R.C. 4719.07(C) by making charges to Plaintiffs' credit card account before obtaining an original copy of a written confirmation of the purchase bearing the purchaser's signature.

106. This was an unfair or deceptive act or practice under the CSPA. R.C. 4719.14.

107. MedGuard has therefore violated the CSPA, and Plaintiffs are entitled to damages.

108. Lifewatch and Quick Response are liable for MedGuard's misconduct as alter egos of MedGuard.

      **g.**    **Violations of R.C. 4719.21.**

109.    Pursuant to R.C. 4719.21, "[n]o telephone solicitor shall intentionally block. . . the disclosure of the telephone number from which a telephone solicitation is made."

110.    MedGuard violated R.C. 4719.21 by causing its calls to Angela Thompson's cellular phone to display on her caller ID as local calls from non-functional numbers rather than as the true number from which the calls originated.

111.    This was an unfair or deceptive act or practice under the CSPA. R.C. 4719.21(C).

112.    MedGuard has therefore violated the CSPA, and Plaintiffs are entitled to damages.

113.    Lifewatch and Quick Response are liable for MedGuard's misconduct as alter egos of MedGuard.

## COUNT V — CIVIL ACTION BY PURCHASER UNDER R.C. 4719.15

114.    Pursuant to R.C. 4719.15, "[a] purchaser injured by a violation of a provision of sections 4719.01 to 4719.18 of the Revised Code or a rule adopted under any provision of those sections may bring a civil action against the telephone solicitor or salesperson who committed the violation for damages in a court of common pleas and may apply to the court for an order enjoining the violation. Upon the purchaser's showing that the telephone solicitor or salesperson has committed a violation of one of those sections or rules, the court shall grant an injunction, temporary restraining order, or other appropriate relief."

115. Plaintiffs are "purchasers" under R.C. 4719.15 because they were "solicited to become or [did] become financially obligated as a result of a telephone solicitation."  R.C. 4719.01(A)(5).

116. MedGuard violated R.C. 4719.02 by failing to obtain a certificate of registration as a telemarketer, as explained above.

117. MedGuard violated R.C. 4719.04 by failing to obtain a surety bond and file a copy of it with the Ohio Attorney General, creating uncertainty in Plaintiffs as to whether they will be able to recover on any judgment awarded in this case.

118. MedGuard violated R.C. 4719.06(A)-(B) by failing to make required disclosures during the telephone calls, including but not limited to "the solicitor's or salesperson's true name and the company on whose behalf the solicitation is being made."

119. MedGuard violated R.C. 4719.07(C) by making charges to Plaintiffs' credit card account before obtaining an original copy of a written confirmation of the purchase bearing the purchaser's signature.

120. MedGuard committed these violations knowingly and willfully.

121. Plaintiffs were injured by MedGuard's violations because (among other things) these violations made it difficult to know the identity of the company soliciting Plaintiffs, and they found it necessary to temporarily pay money to MedGuard (and reveal their financial account information to MedGuard) just to make the calls stop.

122. Plaintiffs are entitled to statutory damages in the amount of $29.95, plus actual damages, reasonable attorney fees, and costs.

123. Plaintiffs further pray for punitive or exemplary damages in amounts to be determined at trial. R.C. 4719.15(C).

124. Lifewatch and Quick Response are liable for MedGuard's misconduct as alter egos of MedGuard.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment as follows:

**a.** Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

**b.** Awarding Plaintiff damages in the amount of $500 for each violation of the TCPA;

**c.** Awarding Plaintiff treble damages for willful or knowing violations by Defendant of the TCPA;

**d.** Entering an injunction pursuant to R.C. 4719.15(A) prohibiting Defendant from making further telemarketing calls into Ohio until such time as it is properly registered as a telemarketer in this State;

**e.** Awarding Plaintiff $200 per violation of the CSPA, plus noneconomic damages up to $5,000 per violation in an amount to be determined at trial, plus reasonable attorney fees;

**f.** Awarding Plaintiff statutory damages of $29.95, actual damages, attorney fees, and punitive damages under R.C. 4719.15;

**g.** Awarding Plaintiff's counsel an enhancement or multiplier of attorney fees pursuant to the CSPA;

[ 18 ]

h. Awarding Plaintiff the costs of this action; and

i. Awarding any other relief as this Honorable Court deems just and appropriate.

**<u>A TRIAL BY JURY IS DEMANDED.</u>**


Dated: August 9, 2018

<u>By: s/ Jonathan Hilton</u>

Jonathan Hilton (0095742)
HILTON PARKER LLC
10400 Blacklick-Eastern Rd NW, Suite 110
Pickerington, OH 43147
Tel: (614) 992-2277
Fax: (614) 427-5557
jhilton@hiltonparker.com