## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ANGELA THOMPSON and BRIAN THOMPSON, | ) ) ) | CIVIL COMPLAINT |
| Plaintiffs, | ) ) ) | CASE NO. 1:18-CV-01836 |
| v. | ) ) | |
| KIMRAIN MARKETING LLC; KIMBERLY RAINWATER; QUICK RESPONSE ALERT, INC.; HING-TACK CHEN; and YIN FONG CHEN as trustee for the YIN-FONG CHEN TRUST and the YIN-FONG CHEN FAMILY TRUST, | ) ) ) ) ) ) ) ) | **JUDGE DONALD C. NUGENT**  **MAG. JUDGE JONATHAN D. GREENBERG** |
| Defendants. | ) ) ) | **JURY DEMAND** |

## [PROPOSED] FIRST AMENDED COMPLAINT

Now come ANGELA THOMPSON and her husband BRIAN THOMPSON ("Plaintiffs"), complaining as to the conduct of KIMRAIN MARKETING LLC ("Kimrain"); KIMBERLY RAINWATER ("Rainwater"); QUICK RESPONSE ALERT, INC. ("Quick Response"); HING-TACK CHEN ("Chen"); and YIN-FONG CHEN as trustee for the YIN-FONG CHEN TRUST and the YIN-FONG CHEN FAMILY TRUST ("Yin-Fong Chen") (collectively, "Defendants"), for their unlawful conduct as follows:

### NATURE OF THE ACTION

1.      Plaintiffs bring this action for damages pursuant to the Telephone Consumer Protection Act ("TCPA") under 47 U.S.C. § 227 *et seq.*; the Ohio Consumer Sales Practices Act ("CSPA") under Ohio Rev. Code Ann. § 1345 *et seq.*; the Ohio Telephone Solicitation Sales Act ("TSSA") at R.C. 4719.15; and New York common law.

[ 1 ]

## JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the TCPA.  Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 as the action arises under the laws of the United States.  Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Defendant conducts business in the Northern District of Ohio and substantial portion of the events giving rise to the claims occurred within the Northern District of Ohio.

## PARTIES

4. Plaintiffs are natural persons residing within this District.

5. Plaintiffs are "person[s]" as defined by 47 U.S.C. § 153(39).

6. Defendant Kimrain was a marketing business that placed automated telephone calls to consumers in order to induce them to purchase medical alert devices and agree to medical alert device monitoring contracts.

7. Defendant Kimrain was, prior to its dissolution on September 28, 2018, a Florida limited liability company.

8. Defendant Rainwater is a natural person residing, on information and belief, in the State of Florida.

9. Defendant Rainwater was an officer and, on information and belief, the sole principal of Defendant Kimrain.

10. Defendant Quick Response is a provider of medical alert devices and medical alert device monitoring services.

[ 2 ]

11.     Defendant Quick Response is a New York Corporation with its headquarters in Lynbrook, New York.

12.     Defendant Chen is a natural person residing in the State of New York.

13.     Defendant Chen is an officer and the sole principal of Defendant Quick Response.

14.     Defendant Yin-Fong Chen is a natural person residing in the State of New York.

15.     Defendant Yin-Fong Chen is the wife of Defendant Chen and is trustee for the Yin-Fong Chen Trust and the Yin-Fong Chen Family Trust.

16.     Defendants are "person[s]" as defined by 47 U.S.C. § 153(39).

17.     Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers at all times relevant to the instant action.

### FACTS SUPPORTING CAUSES OF ACTION

18.     On June 25, 2009, Brian Thompson registered his personal cellular phone, number (216) XXX-3056, on the National Do-Not-Call Registry.

19.     On June 16, 2012, Angela Thompson registered her personal cellular phone, number (216) XXX-4510, on the National Do-Not-Call Registry.

[ 3 ]

20.     On May 9, 2017, Angela Thompson received a call on her personal cellular phone.  The call went to voicemail, and the caller left the following pre-recorded message on Angela Thompson's voicemail:

> . . . out of every three Americans that are over 65 fall every year in the U.S., and that fall may be the last.  Don't be a statistic; press 1 now to receive a medical alarm at no cost. Press 1 now or press 9 to opt out.

21.     On information and belief, this call was placed by Kimrain on behalf of Quick Response.

22.     On May 18, 2017, Angela Thompson received another pre-recorded voice call on her cellular phone featuring a substantially identical message.  This call was answered or sent to voicemail.

23.     On information and belief, this call was placed by Kimrain on behalf of Quick Response.

24.     On May 26, 2017, Angela Thompson received another pre-recorded voice call on her cellular phone featuring a substantially identical message.  This call was answered or sent to voicemail.

25.     On information and belief, this call was placed by Kimrain on behalf of Quick Response.

26.    On June 9, 2017, Angela Thompson received another call on her cellular phone.  Brian Thompson, her husband, answered this call and heard a more complete version of the pre-recorded message previously left on Angela Thompson's answering machine:

> Hi this is Todd with the fulfillment department.  Your wellness package is ready to be shipped.  Please press 1 and hold the line to receive a medical alert system.  One out of every three Americans that are over 65 fall every year in the U.S., and that fall may be the last.  Don't be a statistic; press 1 now to receive a medical alarm at no cost.  Press 1 now or press 9 to opt out.

27.    Brian Thompson then followed the prompts of the interactive voice response system until he placed an order for a medical alert device and the associated monitoring service.

28.    This interaction resulted in an attempted charge of $29.95 on Brian Thompson's credit card from Quick Response.  The charge did not go through as a result of insufficient funds available on the card.

29.    This attempted charge allowed Brian Thompson to identify the entity behind the automated calls to Angela Thompson, because at no point during his interactions with the interactive voice response system was the company responsible for the call identified.

30.    Brian Thompson, acting with Angela Thompson's authorization, called Quick Response's 800-number and told the Quick Response employee who he reached not to call again.  He also asked for a copy of Quick Response's do not call policy.

[ 5 ]

31.     Despite this interaction, Angela Thompson continued to receive calls featuring the same or a similar pre-recorded voice message.

32.     On August 1, 2017, Angela Thompson received another call on her cellular phone.  This call went to voicemail, and the caller left a pre-recorded message substantially identical to the message transcribed in ¶ 19, *supra*, on Angela Thompson's voicemail.

33.     On information and belief, this call was placed by Kimrain on behalf of Quick Response.

34.     On September 28, 2017, Angela Thompson received another call on her cellular phone.  This call went to voicemail, and the caller left a pre-recorded message substantially identical to the message transcribed in ¶ 19, *supra*, on Angela Thompson's voicemail.

35.     On information and belief, this call was placed by Kimrain on behalf of Quick Response.

36.     On March 8, 2018, Angela Thompson received another call on her cellular phone.  This call went to voicemail, and the caller left a pre-recorded message substantially identical to the message transcribed in ¶ 19, *supra*, on Angela Thompson's voicemail.

37.     On information and belief, this call was placed by Kimrain on behalf of Quick Response.

[ 6 ]

38.     On March 22, 2018, Angela Thompson received another call on her cellular phone.  Brian Thompson, her husband, answered this call and again heard a more complete version of the pre-recorded message previously left on Angela Thompson's answering machine:

> Hi this is Todd with the fulfillment department.  Your wellness package is ready to be shipped.  Please press 1 and hold the line to receive a medical alert system.  One out of every three Americans that are over 65 fall every year in the U.S., and that fall may be the last.  Don't be a statistic; press 1 now to receive a medical alarm at no cost.  Press 1 now or press 9 to opt out.

39.     Brian Thompson then followed the prompts of the interactive voice response system until he placed an order for a medical alert device and the associated monitoring service.

40.     This interaction resulted in a $29.95 charge on Brian Thompson's credit card from nonparty MedGuard Alert, Inc.

41.     This call was placed by Kimrain, which instantaneously or near-instantaneously "sold" the contract it formed with Brian Thompson to Lifewatch, Inc., which then instantaneously or near-instantaneously "sold" the contract to MedGuard Alert, Inc.

42.     On information and belief, this was the only instance in which Kimrain sold or intended to sell the contract it formed or sought to form with Brian Thompson to Lifewatch, Inc. or MedGuard Alert, Inc.

[ 7 ]

43.     On information and belief, in all other instances Kimrain sold or intended to sell the contract it formed or sought to form with Brian Thompson to Quick Response, and Kimrain therefore acted as an agent of Quick Response in such instances.

44.     On April 9, 2018, Angela Thompson received another call on her cellular phone.  This call went to voicemail, and the caller left a pre-recorded message substantially identical to the message transcribed in ¶ 19, *supra*, on Angela Thompson's voicemail.

45.     On information and belief, this call was placed by Kimrain on behalf of Quick Response.

46.     On April 25, 2018, Angela Thompson received another call on her cellular phone.  This call went to voicemail, and the caller left a pre-recorded message substantially identical to the message transcribed in ¶ 19, *supra*, on Angela Thompson's voicemail.

47.     On information and belief, this call was placed by Kimrain on behalf of Quick Response.

48.     On May 10, 2018, Angela Thompson received another call on her cellular phone.  This call went to voicemail, and the caller left a pre-recorded message substantially identical to the message transcribed in ¶ 19, *supra*, on Angela Thompson's voicemail.

49.     On information and belief, this call was placed by Kimrain on behalf of Quick Response.

[ 8 ]

50.     On August 23, 2018, Brian Thompson received a call on his personal cellular phone.  Brian Thompson answered the call and encountered an interactive voice response system similar or identical to that present in the calls alleged above and featuring a voice apparently identical to that used in the calls alleged above.

51.     On information and belief, this call was placed by Kimrain on behalf of Quick Response.

52.     All of Kimrain's calls to Angela Thompson's cellular phone, except for the calls on March 8, 2018 and March 22, 2018, displayed on her caller ID as originating from local 216 area code numbers.  Each of these numbers, when called back, was non-functional.

53.     Kimrain's call to Brian Thompson's cellular phone displayed on his caller ID as originating from a local 216 area code number.  This number, when called back, was non-functional.

54.     Upon information and belief, Kimrain used the technique known as "spoofing" to cause its calls to appear as if they originated from such local numbers.

55.     Angela Thompson received numerous other calls that did not result in voicemails but displayed on her caller ID as originating from phone numbers similar to the apparently spoofed numbers shown for most of Kimrain's calls.  On information and belief, Kimrain was responsible for most or all of those additional calls.

56.     Kimrain does not possess either a certificate of registration or a certificate of registration renewal under R.C. 4719.03.[1]

57.     Kimrain's campaign of harassing phone calls was highly irritating and caused Plaintiffs actual harm, including, but not limited to, invasion of privacy, aggravation that accompanies unsolicited telephone calls, emotional distress, increased usage of their telephone services, and temporary deprivation of money or credit.

58.     On information and belief, Rainwater maintained Kimrain in a deliberately undercapitalized and insolvent state.

59.     On information and belief, there existed no observance of corporate formalities for vis a vis the separation of funds between Kimrain and Rainwater, and Kimrain functioned simply as a façade for Rainwater.

60.     On information and belief, Rainwater improperly siphoned funds from Kimrain prior to its dissolution.

61.     It is therefore in the interests of justice to pierce the corporate veil and hold Defendant Rainwater liable for Kimrain's acts.

62.     On information and belief, except where otherwise noted Kimrain placed the violative telephone calls described below at the behest of Quick Response and with Quick Response's knowledge and consent as to the methods used.

---

[1] *See* Ohio Attorney General, "Telephone Solicitors – Companies Currently Registered as Telephone Solicitors Under Telephone Solicitation Sales Act (TSSA)" (last visited May 9, 2019), *available at* https://www.ohioattorneygeneral.gov/Individuals-and-Families/Consumers/Telephone-Solicitors (not listing Kimrain as registered).

63.     On information and belief, Kimrain also had direct access to input information about consumers into Quick Response's computer system.

64.     Therefore, Kimrain acted at all times and in all ways relevant to the Complaint, except where otherwise noted, as an agent of Quick Response, and Quick Response is thus liable for Kimrain's acts.

65.     On information and belief, Chen maintained Quick Response in a deliberately undercapitalized and insolvent state.

66.     Quick Response is, at present, insolvent, with a bank balance of approximately $48.

67.     Further, on information and belief, there existed no observance of corporate formalities for vis a vis the separation of funds between Chen and Quick Response, and Quick Response functioned simply as a façade for Chen.

68.     On information and belief, Chen improperly siphoned funds from Quick Response in order to reduce its bank balance to its current state.

69.     It is therefore in the interests of justice to pierce the corporate veil and hold Chen liable for Quick Response's acts.

### COUNT I — AUTODIALER VIOLATIONS OF THE TCPA
### (AGAINST ALL DEFENDANTS EXCEPT YIN-FONG CHEN)

70.     Plaintiffs reallege the paragraphs above as though fully set forth herein.

71.     The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(A), prohibits calling persons on their cellular phones using an automatic telephone dialing system ("ATDS") without their prior express consent.

[ 11 ]

72.     The TCPA, under 47 U.S.C. § 227(b)(1), defines an ATDS as "equipment which has the capacity … to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."

73.     The volume of calls placed by Kimrain to Angela and Brian Thompson, and the use of an interactive voice response system, indicate that Kimrain employed an ATDS to place its calls to Angela and Brian Thompson's cellular telephones.

74.     At no time did Plaintiffs give prior express consent to Kimrain or Quick Response permitting them to contact Plaintiffs via an ATDS.

75.     Plaintiffs revoked any purported consent on June 9, 2017, when Brian Thompson called Quick Response to request that they stop calling Plaintiffs.

76.     Kimrain violated the TCPA by placing at least eleven phone calls to Angela Thompson's cellular phone and one call to Brian Thompson's cellular phone using an ATDS without prior consent.

77.     Kimrain's conduct in violating the TCPA was knowing and willful.

78.     Plaintiffs are entitled to $500 per call under this count, trebled for knowing or willful violations.

79.     It is in the interests of justice to pierce the corporate veil and find Rainwater liable for Kimrain's conduct.

80.     Quick Response is liable for Kimrain's conduct under common law theories of agency, including actual and apparent authority.

81.     It is in the interests of justice to pierce the corporate veil and find Chen liable for Quick Response's conduct.

<u>COUNT II — PRE-RECORDED VOICE VIOLATIONS OF THE TCPA</u>
<u>(AGAINST ALL DEFENDANTS EXCEPT YIN-FONG CHEN)</u>

82.     Plaintiffs reallege the paragraphs above as though fully set forth herein.

83.     The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(A), prohibits calling persons on their cellular phones using a pre-recorded or artificial voice without their prior express consent.

84.     At no time did Plaintiffs give prior express consent to Kimrain or Quick Response permitting them to contact Plaintiffs via pre-recorded or artificial voices.

85.     Plaintiffs revoked any purported consent on June 9, 2017, when Brian Thompson called Quick Response to request that they stop calling Plaintiffs.

86.     Kimrain violated this provision by placing at least eleven calls to Angela Thompson's cellular phone and one call to Brian Thompson's cellular phone that featured a pre-recorded or artificial voice.

87.     Kimrain's conduct in violating the TCPA was knowing and willful.

88.     Plaintiffs are entitled to $500 per call under this count, trebled for knowing or willful violations.

89.     It is in the interests of justice to pierce the corporate veil and find Rainwater liable for Kimrain's conduct.

90.     Quick Response is liable for Kimrain's conduct under common law theories of agency, including actual and apparent authority.

91.     It is in the interests of justice to pierce the corporate veil and find Chen liable for Quick Response's conduct.

[ 13 ]

## COUNT III — VIOLATIONS OF THE "DO NOT CALL" LIST
### (AGAINST ALL DEFENDANTS EXCEPT YIN-FONG CHEN)

92.     Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

93.     The TCPA, pursuant to 47 U.S.C. § 227(c)(5)(B), permits a person who "has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation" of certain regulations promulgated by the Federal Communications Commission ("FCC") to sue for statutory damages. The amount of these damages is $500 per violation, trebled for knowing or willful violations.

94.     The FCC has, in the regulations described by the above code section, prohibited "initiat[ing] any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

95.     Further, the FCC has prohibited calling a telephone subscriber who has requested not to be called again, and these regulations require telemarketers to maintain certain internal policies and procedures to ensure opt-out requests are honored.  *See* 47 C.F.R. § 64.1200(d).

96.     Kimrain violated the TCPA by placing calls to Angela and Thompson's cellular phones when both had been registered on the national "Do Not Call" list.

97.     Kimrain further violated the TCPA by not honoring Angela Thompson's opt-out request and by maintaining inadequate telemarketing policies and procedures.

98.     Kimrain's violations were knowing or willful.

[ 14 ]

99.    Plaintiffs are entitled to $500 per call under this Count, trebled for knowing or willful violations.

100.    It is in the interests of justice to pierce the corporate veil and find Rainwater liable for Kimrain's conduct.

101.    Quick Response is liable for Kimrain's conduct under common law theories of agency, including actual and apparent authority.

102.    It is in the interests of justice to pierce the corporate veil and find Chen liable for Quick Response's conduct.

## COUNT IV — VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT (AGAINST ALL DEFENDANTS EXCEPT YIN-FONG CHEN)

103.    Plaintiffs reallege the above paragraphs as though fully set forth herein.

104.    The CSPA, pursuant to R.C. 1345.02(A), states that "[n]o supplier shall commit an unfair or deceptive practice in connection with a consumer transaction."

105.    Plaintiffs are "person[s]" as defined by R.C. 1345.01(B).

106.    Defendants are "supplier[s]" as defined by R.C. 1345.01(C).

107.    Medical device sales are "consumer transactions" under R.C. 1345.01(A).

108.    R.C. §1345.09(B) thus grants Plaintiffs a private right of action against Defendants for $200 per violation of the CSPA, plus noneconomic damages of up to $5,000 per violation in an amount to be determined at trial, plus attorney fees.

109.    Under the CSPA, the Court may award a multiplier for attorney fees for contingency fee cases, such as this one.  *Davis v. Mut. Life Ins. Co. of New York*, 6 F.3d 367, 383 (6th Cir. 1993) (citing *Bittner v. Tri-Cty. Toyota, Inc.*, 569 N.E.2d 464 (Ohio 1991)).

        **a.**      **Autodialer Violations of the TCPA.**

110.    Kimrain violated the CSPA by using an ATDS in violation of the TCPA as set forth above.

111.    Kimrain's actions were unfair, deceptive, and unconscionable under the CSPA because they were intended to harass Plaintiffs into agreeing to pay a significant monthly fee for a medical alert device.

112.    Violations of the TCPA (at least to the extent that they are unfair, deceptive, or unconscionable) are violations of the CSPA. *See, e.g.*, *Ambrose v. Prime Time Enterprises*, No. CV 04 547298, 2005 WL 646147, at *1 (Ohio Com. Pl. Feb. 23, 2005); *Tower City Title Agency, Inc. v. Phillips*, 2008-Ohio-957, ¶ 5 ("Ohio courts have found that a violation of the TCPA also results in a violation of R.C. 1345.02 of the Ohio CSPA.").

113.    Kimrain committed such violations after such decisions were available for public inspection pursuant to R.C. 1345.05(A)(3).

114.    Kimrain's actions therefore violated the CSPA, and Plaintiffs are entitled to compensation for each and every violation.

115.    It is in the interests of justice to pierce the corporate veil and find Rainwater liable for Kimrain's conduct.

116.    Quick Response is liable for Kimrain's conduct under common law theories of agency, including actual and apparent authority.

117.    It is in the interests of justice to pierce the corporate veil and find Chen liable for Quick Response's conduct.

[ 16 ]

> **b.** **Pre-Recorded Voice Violations of the TCPA.**

118.    Kimrain violated the CSPA by using a pre-recorded voice in violation of the TCPA as set forth above.

119.    Kimrain's actions were unfair, deceptive, and unconscionable under the CSPA because they were intended to harass Plaintiffs into agreeing to pay a significant monthly fee for a medical alert device.

120.    Violations of the TCPA (at least to the extent that they are unfair, deceptive, or unconscionable) are violations of the CSPA.  *See, e.g.*, *Ambrose v. Prime Time Enterprises*, No. CV 04 547298, 2005 WL 646147, at *1 (Ohio Com. Pl. Feb. 23, 2005); *Tower City Title Agency, Inc. v. Phillips*, 2008-Ohio-957, ¶ 5 ("Ohio courts have found that a violation of the TCPA also results in a violation of R.C. 1345.02 of the Ohio CSPA.").

121.    Kimrain committed such violations after such decisions were available for public inspection pursuant to R.C. 1345.05(A)(3).

122.    Kimrain's actions therefore violated the CSPA, and Plaintiffs are entitled to compensation for each and every violation.

123.    It is in the interests of justice to pierce the corporate veil and find Rainwater liable for Kimrain's conduct.

124.    Quick Response is liable for Kimrain's conduct under common law theories of agency, including actual and apparent authority.

125.    It is in the interests of justice to pierce the corporate veil and find Chen liable for Quick Response's conduct.

### c. Violations of the "Do Not Call" List.

126.    Kimrain violated the CSPA by placing calls to Angela and Brian Thompson's cellular phones when they had been registered on the national "Do Not Call" list.

127.    Kimrain's actions were unfair, deceptive, and unconscionable under the CSPA because they were intended to harass Plaintiffs into agreeing to pay a significant monthly fee for a medical alert device.

128.    Telemarketing calls to phone numbers listed on the national "Do Not Call" list are unfair acts in violation of the CSPA. *United States v. Dish Network LLC*, 256 F.Supp.3d 810, 967 (C.D. Ill. 2017).

129.    Kimrain committed such violations after such decisions were available for public inspection pursuant to R.C. 1345.05(A)(3).

130.    Kimrain's actions therefore violated the CSPA, and Plaintiffs are entitled to compensation for each and every violation.

131.    It is in the interests of justice to pierce the corporate veil and find Rainwater liable for Kimrain's conduct.

132.    Quick Response is liable for Kimrain's conduct under common law theories of agency, including actual and apparent authority.

133.    It is in the interests of justice to pierce the corporate veil and find Chen liable for Quick Response's conduct.

### d. Violations of R.C. 4719.02.

134. R.C. 4719.02 provides that "[n]o person shall act as a telephone solicitor without first having obtained a certificate of registration or registration renewal from the attorney general under section 4719.03 of the Revised Code."

135. Kimrain acted as a telephone solicitor within the meaning of R.C. 4719.01(A)(7) & (8) each time it placed a call to Plaintiff in which it "represent[ed] the price or the quality or availability of goods or services."

136. Upon reference, Kimrain has not obtained a certificate of registration or registration renewal under section 4719.03.

137. R.C. 4719.14 provides that "A violation of section 4719.02 . . . of the Revised Code is an unfair or deceptive act or practice in violation of section 1345.02 of the Revised Code."

138. Kimrain has therefore committed unfair or deceptive acts or practices in violation of the CSPA, R.C. 1345.02 by acting as a telephone solicitor without proper registration.

139. Plaintiffs are entitled to compensation for each and every violation.

140. It is in the interests of justice to pierce the corporate veil and find Rainwater liable for Kimrain's conduct.

141. Quick Response is liable for Kimrain's conduct under common law theories of agency, including actual and apparent authority.

142. It is in the interests of justice to pierce the corporate veil and find Chen liable for Quick Response's conduct.

[ 19 ]

### e.        Violation of R.C. 4719.06.

143.    Pursuant to R.C. 4719.06, Kimrain was required to make certain important disclosures (such as its true name) within the first sixty seconds of making the call.

144.    Additionally, Kimrain was required to make disclosures to Plaintiffs regarding their rights before selling them anything.

145.    Kimrain failed to make the required disclosures.

146.    Failing to make these disclosures constitutes a deceptive act under the CSPA.  R.C. 4719.14.

147.    Plaintiffs were injured because Kimrain failed to make the required disclosures.  Specifically, they had to be charged money by Quick Response to learn its identity, and they had to pursue several other then-defendants to discovery in order to learn Kimrain's identity.

148.    Kimrain has therefore violated the CSPA, and Plaintiffs are entitled to damages.

149.    It is in the interests of justice to pierce the corporate veil and find Rainwater liable for Kimrain's conduct.

150.    Quick Response is liable for Kimrain's conduct under common law theories of agency, including actual and apparent authority.

151.    It is in the interests of justice to pierce the corporate veil and find Chen liable for Quick Response's conduct.

      **f.**     **Violation of R.C. 4719.07(C).**

152.    Quick Response violated R.C. 4719.07(C) by making a charge to Plaintiffs' credit card account before obtaining an original copy of a written confirmation of the purchase bearing the purchaser's signature.

153.    This was an unfair or deceptive act or practice under the CSPA. R.C. 4719.14.

154.    Quick Response has therefore violated the CSPA, and Plaintiffs are entitled to damages.

155.    Kimrain is liable for Quick Response's conduct as it participated in a conspiracy to violate Plaintiffs' rights under the CSPA through its act of inducing Plaintiffs to agree to make payments to Quick Response before they provided an original copy of a written confirmation of the purchase bearing the purchaser's signature.

156.    It is in the interests of justice to pierce the corporate veil and find Chen liable for Quick Response's conduct.

157.    It is in the interests of justice to pierce the corporate veil and find Rainwater liable for Kimrain's conduct.

> **g.** **Violations of R.C. 4719.21.**

158.    Pursuant to R.C. 4719.21, "[n]o telephone solicitor shall intentionally block. . . the disclosure of the telephone number from which a telephone solicitation is made."

159.    Kimrain violated R.C. 4719.21 by causing its calls to Angela and Brian Thompson's cellular phones to display on their caller IDs as local calls from non-functional numbers rather than as the true number from which the calls originated.

160.    This was an unfair or deceptive act or practice under the CSPA. R.C. 4719.21(C).

161.    Kimrain has therefore violated the CSPA, and Plaintiffs are entitled to damages.

162.    It is in the interests of justice to pierce the corporate veil and find Rainwater liable for Kimrain's conduct.

163.    Quick Response is liable for Kimrain's conduct under common law theories of agency, including actual and apparent authority.

164.    It is in the interests of justice to pierce the corporate veil and find Chen liable for Quick Response's conduct.

### <u>Count V — Civil Action by Purchaser under R.C. 4719.15</u>
### <u>(Against All Defendants Except Yin-Fong Chen)</u>

165.    Pursuant to R.C. 4719.15, "[a] purchaser injured by a violation of a

provision of sections 4719.01 to 4719.18 of the Revised Code or a rule adopted under

any provision of those sections may bring a civil action against the telephone solicitor or

salesperson who committed the violation for damages in a court of common pleas and

may apply to the court for an order enjoining the violation.  Upon the purchaser's

showing that the telephone solicitor or salesperson has committed a violation of one of

those sections or rules, the court shall grant an injunction, temporary restraining order,

or other appropriate relief."

166.    Plaintiffs are "purchasers" under R.C. 4719.15 because they were

"solicited to become or [did] become financially obligated as a result of a telephone

solicitation."  R.C. 4719.01(A)(5).

167.    Kimrain violated R.C. 4719.02 by failing to obtain a certificate of

registration as a telemarketer, as explained above.

168.    Kimrain violated R.C. 4719.04 by failing to obtain a surety bond and file a

copy of it with the Ohio Attorney General, creating uncertainty in Plaintiffs as to

whether they will be able to recover on any judgment awarded in this case.

169.    Kimrain violated R.C. 4719.06(A)-(B) by failing to make required

disclosures during the telephone calls, including but not limited to "the solicitor's or

salesperson's true name and the company on whose behalf the solicitation is being

made."

170.    Quick Response violated R.C. 4719.07(C) by making charges to Plaintiffs' credit card account before obtaining an original copy of a written confirmation of the purchase bearing the purchaser's signature.

171.    Kimrain and Quick Response's violations were knowing and willful.

172.    Plaintiffs were injured by Kimrain and Quick Response's violations because, *inter alia*, these violations made it difficult to identify the company soliciting Plaintiffs, and they found it necessary to attempt to pay money to Quick Response (revealing their financial account information to Quick Response) to make the calls stop.

173.    Plaintiffs are entitled to statutory damages in the amount of $29.95, plus actual damages, reasonable attorney fees, and costs.

174.    Plaintiffs further pray for punitive or exemplary damages in amounts to be determined at trial.  R.C. 4719.15(C).

175.    Rainwater is liable for Kimrain's conduct as it participated in a conspiracy to violate Plaintiffs' rights under the CSPA through its act of inducing Plaintiffs to agree to make payments to Quick Response before they provided an original copy of a written confirmation of the purchase bearing the purchaser's signature.

176.    It is in the interests of justice to pierce the corporate veil and find Rainwater liable for Kimrain's conduct.

177.    Quick Response is liable for Kimrain's conduct under common law theories of agency, including actual and apparent authority.

178.    It is in the interests of justice to pierce the corporate veil and find Chen liable for Quick Response's conduct.

[ 24 ]

## COUNT VI — FRAUDULENT TRANSFER
### (AGAINST YIN-FONG CHEN ONLY)

179.    Under N.Y. Debtor and Creditor Law § 276, "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

180.    Blind-call telemarketing using ATDSes and pre-recorded voices is illegal and therefore a high-litigation-risk business, and, on information and belief, Chen knew and knows this.

181.    On information and belief, this fact, along with the litigation risk from Chen's other activities, formed a substantial part of his reasons for forming and augmenting the Yin-Fong Chen Trust and the Yin-Fong Chen Family Trust.

182.    For example, on December 21, 2011, Chen transferred a single-family dwelling in Queens, NY that is, on information and belief, his primary residence to Yin-Fong Chen as trustee for the Yin-Fong Chen Trust.

183.    Then, on June 2, 2016, Yin-Fong Chen as trustee for the Yin-Fong Chen Trust transferred the parcel to Yin-Fong Chen as the trustee for the Yin-Fong Chen Family Trust.

184.    On information and belief, every transfer made by Chen to the Yin-Fong Chen Trust or the Yin-Fong Chen Family Trust was made with actual intent to hinder, delay, or defraud future creditors.

185.    Every transfer made by Chen to the Yin-Fong Chen Trust or the Yin-Fong Chen Family Trust is therefore fraudulent and subject to being set aside to satisfy any judgment following from this action.

186.    Similarly, on information and belief, every transfer between the Yin-Fong Chen Trust and the Yin-Fong Chen Family Trust, of assets initially fraudulently transferred to one of those entities, was made with actual intent to hinder, delay, or defraud future creditors.

187.    Every transfer between the Yin-Fong Chen Trust and the Yin-Fong Chen Family Trust, of assets initially fraudulently transferred to one of those entities, is therefore fraudulent and subject to being set aside to satisfy any judgment following from this action.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment as follows:

**a.**    Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

**b.**    Awarding Plaintiff damages in the amount of $500 for each violation of the TCPA;

**c.**    Awarding Plaintiff treble damages for willful or knowing violations by Defendant of the TCPA;

**d.**    Entering an injunction pursuant to R.C. 4719.15(A) prohibiting Defendants from making further telemarketing calls into Ohio until such time as it is properly registered as a telemarketer in this State;

[ 26 ]

**e.**     Awarding Plaintiff $200 per violation of the CSPA, plus noneconomic damages up to $5,000 per violation in an amount to be determined at trial, plus reasonable attorney fees;

**f.**     Awarding Plaintiff statutory damages of $29.95, actual damages, attorney fees, and punitive damages under R.C. 4719.15;

**g.**     Awarding Plaintiff's counsel an enhancement or multiplier of attorney fees pursuant to the CSPA;

**h.**     Awarding Plaintiff the costs of this action;

**i.**     Entering an injunction pursuant to N.Y. Debtor and Creditor Law § 279 restraining Chen and from disposing of Chen Family Trust assets;

**j.**     Holding the Chen Family Trust liable for the acts of Chen under N.Y. Debtor and Creditor Law § 278; and

**k.**     Awarding any other relief as this Honorable Court deems just and appropriate.

## A TRIAL BY JURY IS DEMANDED.

Dated:  May 17, 2018

By:  s/ Geoffrey Parker

Geoffrey Parker (0096049)
HILTON PARKER LLC
10400 Blacklick-Eastern Rd NW, Suite 110
Pickerington, OH 43147
Tel: (614) 992-2277
Fax: (614) 427-5557
gparker@hiltonparker.com

[ 27 ]